DUNN v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. **Railroad**: TRANSPORTATION OF LIVE STOCK: CONNECTING ROADS: NEGLIGENCE. In an action against a railroad company to recover damages for negligence in the transportation of live stock, it appeared that the defendant company had undertaken to carry the stock to a point on a connecting road beyond its own line; that owing to the departure of the train on the connecting road before defendant's train arrived at the junction, they were detained there about twenty-four hours in severe winter weather, without food or water, in consequence of which they were greatly damaged; that they finally reached their destination without further delay; that the chief, if not the only injury sustained on the entire route was that caused by the detention, and that the stock was carried under a contract which exempted the defendant from liability for injuries occurring on connecting roads. Evidence having been admitted by the trial court, 1st, to show that when defendant's train was about to start plaintiff requested defendant's agent to telegraph to the agent of the connecting line that the stock was coming, but he failed to comply with

the request, and that it was usual to give such notice, and on receipt of it the trains of the connecting company were accustomed to await the arrival of defendant's trains; 2nd, to show the condition of the stock when they arrived at their destination, their value in that condition, and what they would have been worth if sound; *Held*, that it was all properly admitted, the first as bearing upon the question of negligence; the second, as furnishing data from which the jury could arrive at the damage resulting from the detention, but not for the purpose of charging the defendant with any that might have occurred on the connecting road.

2. ———: ———: INTEREST ON DAMAGES. In such an action interest may be allowed on the amount of damages sustained, to be computed from the institution of the suit.

3. ———: TRANSPORTATION OF LIVE STOCK: CONNECTING ROAD. It is the duty of a railroad company receiving life stock for transportation to have proper machinery and facilities for unloading them whenever, in the course of the transit, it may become necessary to unload them for the purpose of feeding.

4. ———: ———: ———. Where a railroad company undertook to transport live stock to a point beyond its own line, and on the line of a connecting company, and upon arrival of the train at the junction it was found that the stock could not be forwarded immediately, and that, to prevent damage, it should be unloaded, fed and watered; *Held*, that it became the duty of the first company to see that this was done; and that duty could not be imposed on the owner; and this, although he was accompanying the stock under a contract which provided that he should take care of, water and feed them while under transportation.

5. **Practice**: DEFECT OF PARTIES. The objection of defect of parties can be raised only by demurrer or answer, not by instructions to the jury.

6. **Contract of Affreightment**: DAMAGES. A contract of affreightment contained this provision: "Claims for loss and damages must be presented in thirty days from date of shipment in order to receive attention." *Held*, that failure to present within thirty days did not cut off a claimant's cause of action. The language employed is too vague to be allowed that effect. Distinguishing *Rice v. Kansas Pacific R. R.*, 63 Mo. 314.

*Appeal from Shelby Circuit Court.*—HON. JOHN T. REDD, Judge.

The following are the instructions referred to in the

opinion of the court, as having been given by the court below on its own motion :

1. The court instructs the jury that under the contract sued on the defendant was bound to transport the mules from the town of Shelbina to the station at the city of St. Louis, and to deliver said mules to the plaintiff at said station ; that by said contract plaintiff undertook to feed, water and take care of said mules during their transit, and that under said contract it was the duty of defendant to provide all the necessary means for transporting said mules with a reasonable degree of safety, and to provide plaintiff with such facilities to water, feed and take care of the mules as under the circumstances were reasonably requisite for that purpose; and if the jury find from the evidence that the mules were detained at Macon City on their way to St. Louis for want of means of transportation, and that the circumstances accompanying such detention were such as to make it necessary to avoid injury to the mules, that they should be removed from the cars, watered and fed ; and if the jury further find that defendant, or its agents and employees neglected and failed to furnish the usual and customary facilities for that purpose; and if the jury further find that in consequence of such negligence and failure plaintiff's mules were injured, the jury ought to find the issue for plaintiff, and assess his damages at the actual amount of injury or damage sustained by plaintiff caused by such negligence, with interest thereon at the rate of six per cent. from the institution of this suit to the present time.

2. The court instructs the jury that although the jury may believe from the evidence that the mules were injured in value by reason of the fact that they were confined in defendant's cars at Macon City from the time of their arrival at said point until they were started from said point to St. Louis, and by reason of the condition of the weather during said period of time, and want of water and food, yet unless the jury further find from the evidence that

such injury was caused by the failure of defendant, or its agents or employees, to use a reasonable degree of care to prevent such injury, they ought to find for the defendant.

3. That upon the issue as made by the pleadings in this cause, the defendant is not liable for any injury to the mules occurring after said mules left Macon City, if they sustained any such injury.

4. The defendant is not liable in this action for any injury that the mules, in consequence of any vicious propensities, may have inflicted on each other, unless such vicious propensities were excited by the negligence or want of proper care on the part of the defendant, or its employees, nor is defendant liable for any injury to said mules arising from the want of water or food, provided defendant, its agents or employees, used reasonable care to provide plaintiff with such facilities as may have been necessary to enable him to water and feed the mules.

The following are among the ten instructions referred to in the opinion of the court as having been offered by the defendant and refused by the court below :

1. Under the pleadings and evidence the plaintiff is not entitled to recover.

2. The contract read in evidence does not require the defendant, or any of its agents, to notify the connecting carrier of the fact that the defendant has live stock for transportation and delivery to such connecting carrier, and a failure to do so on its part is neither a breach of said contract nor of defendant's duty as a common carrier of live stock.

3. Under the contract read in evidence the defendant only undertook and agreed to carry the mules sued for, promptly and safely, and within a reasonable time, from Shelbina to the next connecting carrier on the line of its road to St. Louis, and there to safely, and within a reasonable time, deliver said mules to said carrier; and that the plaintiff should not be charged more than $58 per car for carrying said mules from Shelbina to St. Louis. If the

jury believe from the evidence that the defendant, promptly and safely, and within a reasonable time after said mules were delivered to it at Shelbina, carried said mules from Shelbina to Macon City, and there delivered said mules to the St. Louis, Kansas City & Northern Railway Company, in good order and condition, within a reasonable time after the arrival of said mules at Macon City; that said St. Louis, Kansas City & Northern Railway Company was the next connecting carrier between the defendant's road at Macon City and St. Louis, then such carrying and delivery, and the payment of not exceeding $58 per car, is a full performance of the contract read in evidence, and they will find for defendant. And in this case there is no evidence that the plaintiff paid more than $58 per car for carrying said mules from Shelbina to St. Louis.

4. If the jury believe from the evidence that the defendant carried the mules sued for from Shelbina to Macon City, promptly and safely, and on time; that it delivered said mules to the St. Louis, Kansas City & Northern Railway Company at Macon City; that said St. Louis, Kansas City & Northern Railway Company received and shipped said mules on the first freight train on its road leaving Macon City for St. Louis; that said St. Louis, Kansas City & Northern Railway Company was the next connecting carrier between the defendant's railroad at Macon City and St. Louis, they will find for defendant; notwithstanding they may further believe from the evidence that said mules remained in the cars in which they were shipped from Shelbina to Macon City, twenty-two hours, awaiting the arrival of the train on the St. Louis, Kansas City & Northern Railway, in which they were shipped from Macon City to St. Louis, provided they shall further believe from the evidence that the plaintiff failed to notify defendant's conductor of the train which carried said mules, agent or yard-master at Macon City, on the arrival of said mules, that he wanted said mules switched up to the chute at Macon City so that he could unload them, until after the engine pull-

ing the train in which said mules were carried had left Macon City, and there was no other engine at Macon City with which defendant could have switched up said mules to said chute.

5. If the jury believe from the evidence that the plaintiff could have got the mules sued for unloaded at Macon City by the first freight train bound from Macon City to Moberly on the St. Louis, Kansas City & Northern Railway after the arrival of said mules at Macon City, and fed, watered and rested, and thereby have saved himself from all the damage which ensued to said mules after the arrival of said train at Macon City, by reason of their not being unloaded, fed, watered and rested, then it was the duty of the plaintiff to have unloaded, fed, watered and rested said mules, and in assessing the plaintiff's damages they will exclude all of said damages from their assessment.

6. If the jury believe from the evidence that James Dunn was a partner of the plaintiff in the mules sued for, then plaintiff is not entitled to recover in his name alone, and they will find for the defendant.

*Geo. W. Easley* for appellant.

*Edwin Silver, Lay & Belch* and *Dunn, Anderson & Boulware* for respondent.

Norton, J.—This suit was instituted in the circuit court of Shelby county for the recovery of damages alleged to have been sustained on a shipment of forty mules in the cars of defendant.

The petition alleges that on the 20th day of January, 1873, plaintiff delivered to defendant at Shelbina, a station on her road, forty head of mules of the value of $5,000, to be shipped to St. Louis; that said mules were received, and defendant, in consideration of the sum of $116, to be paid by plaintiff, undertook to exercise and observe due and proper care in the carriage of said mules as a common

18—68

carrier for hire, except so far as its duty as such was limited by the terms of a written contract entered into at the time the mules were delivered, which said agreement provided. among other things, that the defendant should not be liable for any damages said property might sustain, except such as might occur by the negligence or misconduct of defend-ant, and that plaintiff should take care of, water and feed said stock while under transportation. It is further alleged that the train of defendant conveying said mules arrived at Macon City· about seven o'clock in the evening of the day they were received, where they were to be turned over to the St. Louis, Kansas City & Northern Railway for further transportation to their destination; that plaintiff was on the train for the purpose of feeding, watering and taking care of his stock, and immediately after the arrival of said train at Macon City he learned that said mules would be retained a great length of time awaiting a train on said St. Louis, Kansas City & Northern Railway, and thereupon demanded of defendant's servants that the cars containing his mules should be placed on the track at the stock pens so that he might unload, feed and water them; that to do this defendant wholly failed, but left the said cars on a spur track a great distance from the stock pens with three in-tervening tracks between it and the stock pens, that the mules could not be unloaded from the cars where they were left by defendant, and that they could neither be fed nor watered without being unloaded; that in consequence of the neglect of defendant they were compelled to stand in said cars, in extremely cold weather, for about twenty-four hours without water or food, whereby they were in-jured and damaged in the sum of $2,000.

The answer denies all the allegations of the petition, except the receipt of the mules for transportation and the agreement relating to their shipment, and alleges that un-der the terms of the agreement plaintiff was to take care of and feed the stock, and to assume all risk of injury or amage that the animals might do themselves or to each

other, or which might arise from delay of trains, and that defendant should not be held responsible for any loss or damage which might occur after said stock was delivered at the point on its line to, which, by the contract, it was consigned, or for any loss or damage after said mules were turned over to another railroad company for further transportation. The answer alleges that on the arrival of the train at Macon City the stock was promptly delivered to the St. Louis, Kansas City & Northern Railway for transportation to St. Louis, and that by the terms of the contract plaintiff agreed that if he sustained loss or damage he would present the same within thirty days from date of shipment for adjustment, and that to present such claim plaintiff has wholly failed and neglected. The replication is a denial of the answer. Upon a trial of the cause plaintiff obtained judgment for $850, from which defendant has appealed, and assigns for error that the court admitted improper and illegal evidence, refused proper and gave improper instructions.

After the contract of shipment was read in evidence, which was substantially as set out in the petition and answer, the plaintiff was offered as a witness, and during his examination was asked: "Did you request the agent of defendant at Shelbina to telegraph to the agent of the St. Louis, Kansas City & Northern Railway that you would arrive that evening with two car loads of mules for St. Louis, and to be ready to ship them?" The witness was permitted to answer the question over the objection of defendant, who insisted in the court below, as she does here, that it was irrelevant, that the petition contained no allegation of negligence in this respect, and that defendant, under the contract, was under no legal obligation to telegraph as requested. We think the evidence was pertinent to the issue. The issue was whether the mules were injured by the negligence or misconduct of defendant, and although the special contract had the effect of limiting defendant's

*[Margin note: 1. RAILROADS: transportation of live stock: connecting roads: negligence.]*

liability as a carrier, and of exempting from liability for injuries incurred from delay of trains and other causes mentioned therein, yet if such delay was occasioned by the negligence of defendant, either in doing properly or omitting to do that which was reasonably required to be done touching the business in hand, the defendant is liable for injuries resulting therefrom.     *Read v. St. L., K. C. & N. Ry.*, 60 Mo. 199; *Levering v. U. T. & I. Co.*, 42 Mo. 88; *Wolf v. Am. Ex. Co.*, 43 Mo. 421; *Ketchum v. Am. Mer. Un. Ex. Co.*, 52 Mo. 390.

The mules in question were to be transported from Shelbina to St. Louis, and were to be turned over at Macon City, a point on defendant's line of road, to the St. Louis, Kansas City & Northern Railway for further transportation to their destination.   In view of the fact that such transfer was to be made, and the stipulation contained in the contract (aside from defendant's duty as a common carrier) that " due diligence would be used in sending the stock forward," it was the duty of defendant's agent, when requested, to telegraph to the agent of the connecting line at Macon City the expected arrival of the stock so as to avoid delay at the latter point.   We think the evidence was properly received, especially as it was shown by the agent of the St. Louis, Kansas City & Northern Railway, at Macon City, that it was customary for the agent of defendant at Shelbina to telegraph the agent of the St. Louis, Kansas City & Northern Railway when they had freight to be run over said road to St. Louis, and that in such case it was usual to delay the trains of the latter company till the arrival of defendant's train.

The action of the court in allowing a witness to state, over the objection of defendant, the condition of the mules when taken off the cars on their arrival in St. Louis, their value in the condition they were in, and also their value if in a sound condition, it is claimed was erroneous.   We perceive no valid reason why this evidence should not have been received, for the evidence which had been introduced

tended to show that the chief, if not the only injury sustained by the mules was in consequence of the fact that they had been left standing in the cars at Macon City in cold, sleeting weather, for about twenty-four hours without water or food; that they could not be unloaded, fed or watered because the cars containing them were left on a spur track two hundred feet from the chute of stock pens, that in consequence thereof, they were in a suffering condition, with their limbs much swollen and stiffened; that they went through from Macon City to St. Louis on time, and that such stock would sustain more injury by standing one hour in cars at rest in cold weather, than by standing twelve hours in cars while in motion or running. If the purpose of the evidence was to hold defendant answerable for any damage which occurred after the mules left Macon City in charge of the St. Louis, Kansas City & Northern Railway, it would have been inadmissible, but regarding it in connection with the other evidence as simply furnishing data from which the jury could arrive at the damage sustained while the mules were detained without being watered or fed at Macon City, we think it was properly received. *Sturgeon v. St. L., K. C. & N. Ry. Co.*, 65 Mo. 573.

The court refused ten instructions asked by the defendant, and gave of its own motion four, to which action exception was taken. The instructions given by the court contain a fair exposition of the law as applicable to the facts of the case, and it has been held by this court that in such case the judgment will not be reversed because of the refusal of the court to give other instructions unexceptionable. It is objected that the first instruction makes defendant responsible for injuries occurring beyond its line. We do not think it is subject to this objection. It is true that it tells the jury that under the contract defendant was bound to transport the mules from Shelbina to the city of St. Louis, and to deliver them at that place, but in the estimation of damages they were confined to such damages as occurred

while they were detained at Macon City, and they were expressly told in the third instruction that defendant was not liable for any injury occurring after the mules left Macon City. The contract read in evidence bound defendant to transport the mules to St. Louis, with a limitation against liability for damages occurring in the course of transportation by any connecting line to which they might be turned over for further transportation.

The objection that the instruction authorized the jury to allow interest is answered by the case of *Gray v. Missouri River Packet Co.*, 64 Mo. 50. We, therefore, think the first instruction was properly given and the third asked by the defendant properly refused.

2. ———: ———:
interest on damages.

The fourth instruction which was refused, puts the inability of plaintiff to recover on his failure to notify defendant at Macon City to have the cars containing the mules switched up to the chute of the stock pens, till after the engine pulling the train of cars had left Macon City. This instruction was properly refused because it ignores the duty of defendant to have proper machinery and facilities for unloading stock to be fed when in course of transit it may become necessary to do so, and because it assumes, as a matter of law, that the engine of defendant which pulled the train to Macon City remained a reasonable time after the plaintiff obtained information that the train of the St. Louis, Kansas City & Northern Railway had gone, which fact gave rise to the necessity for unloading the stock. After the ascertainment of this fact plaintiff certainly was entitled to a reasonable time within which to make the demand, and we think, under the evidence, the court could not assume, as it was asked in effect to do, that the engine of defendant remained at Macon City such reasonable length of time. The evidence shows that the train of defendant arrived at Macon City after night; that it was storming and cold and sleeting, that plaintiff left the train immediately on its arrival to ascertain about the train of

3. ———: transportation of live stock: connecting road.

the connecting line, and, learning that it had gone, demanded of the agent of defendant to have his mules sent over to the chute of the stock pens. The conductor of the train testified that the engine remained but fifteen or twenty minutes at Macon City. Under these circumstances the question as to whether the train remained a reasonable length of time should have been referred to the jury.

The fifth instruction was properly refused, because it imposed a duty on plaintiff which devolved on defendant. *Railway v. McCarthy*, 6 Otto 258; *Blackwell v. Fosten*, 1 Met. (Ky.) 95.

4. ——: ——. ——.

The sixth instruction was properly refused under the authority of *Reugger v. Lindenberger*, 53 Mo. 365, and Wag. Stat., § 10, p. 1015.

5. PRACTICE: defect of parties.

On the margin of the contract read in evidence the following words occur: "Claim for loss and damages must be presented within thirty days from date of shipment in order to receive attention." It is contended by appellant that there was no evidence of the presentation of any claim for damages within thirty days, that the first instruction of defendant should have been given. In the case of *Rice v. K. P. Ry. Co.*, 63 Mo. 314, we upheld a stipulation contained in the body of the contract that no claim for damages should be allowed unless demand was made in writing. The stipulation in that case (as observed in the case of *Oxly v. St. L., K. C. & N. Ry.*, 65 Mo. 629) is distinguishable from such stipulations as the one in this case. There it was expressly agreed that no damages should be allowed unless after demand made. Here the words are vague and uncertain as to what result should follow from a failure to present the claim. If it were intended that no right of action should exist after such failure, and no liability rest upon defendant, it should have been so expressed in the contract, and not left to inference. Whatever was intended by the words employed, we cannot construe them so as to deprive the

6, CONTRACT OF AFFREIGHTMENT: damages.

plaintiff of a right of action. Such intention is not expressed, and a stipulation, to have that effect, ought to be clear and certain, and incorporated in the contract as one of its terms and conditions. Judgment affirmed with the concurrence of SHERWOOD, C. J., and NAPTON, J. HENRY and HOUGH, JJ., dissenting.

AFFIRMED.