# WABASH, ST. LOUIS & PACIFIC RY. CO.

## v.

## NOAH PRATT.

1. PLEADING.—Where a suit in case was brought against appellant by appellee for failing to furnish water to a car load of hogs shipped by appellee, and appellant pleaded the general issue, and two special pleas setting up a written contract under which the stock was shipped, and averring breaches of the terms thereof. *Held*, that appellant was not injured by the court below sustaining a demurrer to one of the special pleas, as the same matter of defense could be given in evidence under the general issue.

2. CONTRACT—DUTY OF RAILROAD TO FURNISH WATER.—Where there is a written contract of shipment in which the shipper agrees that he will accompany the stock and feed and water at his own risk, it is the duty of the railroad to provide water to the shipper at suitable points on the line of its road for the use of the stock.

3. NOTICE.—When the notice is not of that character that the mere mailing of it is sufficient to charge the party with notice, such mailing would, however, be a step in the direction of actual notice, and slight corroborative evidence would warrant the inference that such notice was received.

4. SECONDARY EVIDENCE AS TO CONTENTS OF LETTER.—The court is of opinion that the testimony of appellee in reference to the contents of the letter claimed to be lost was properly admitted, as sufficient foundation was laid to justify secondary evidence as to its contents.

5. EVIDENCE.—Where the question at issue was in regard to overloading a car load of hogs, and appellant introduced a witness who stated that he had been in the habit of shipping hogs in cars for many years, and appellant then offered to prove by him that hogs of the number and weight of the hogs in controversy could not be safely shipped in one car in hot weather. *Held*, that such evidence was proper. This was not expert evidence. It was the proof of a fact that could be testified to by any one who knew it.

APPEAL from the Circuit Court of Vermilion county; the Hon. J. W. WILKIN, Judge, presiding.   Opinion filed July 3, 1884.

Messrs. MANN, CALHOUN & FRAZIER, for appellant; as to pleading, cited C. B. & Q. R. R. Co. v. Hale, 2 Bradwell, 159; Angell on Carriers, 440, 446.

Mr. F. BOOKWALTER, for appellee; that letters duly mailed are presumed to reach their destination, cited 1 Greenleaf on Evidence, § 40.

HIGBEE, P. J.   This suit is in case, to recover against appellant as a common carrier for failing and neglecting to furnish water for a car load of hogs while in the care of appellant, being carried from Catlin, Illinois, to Indianapolis, for appellee, by reason whereof said hogs became heated and a portion of them died and others were greatly damaged.

The general issue was pleaded, and also two special pleas, setting up a written contract under which the stock was shipped, and averring breaches of the terms thereof.   To the first special plea the court sustained a demurrer and the ruling in this regard is assigned for error.

We think, notwithstanding the shipment was made under a written contract, that the suit was properly brought in case, and in this form of action the special plea to which the demurrer was sustained was not necessary, as the same matter of defense set up in it could be, and was given in evidence under the general issue, and therefore no injury resulted to appellant by sustaining the demurrer to said plea.

On May 17, 1880, appellee delivered to appellant at Catlin, seventy-two head of hogs, weighing in the aggregate, 15,840 pounds, to be shipped to Indianapolis.   They were loaded about five o'clock P. M. of that day; left Catlin forty minutes later and arrived at Danville about six o'clock, where they were allowed to stand on a side track until between eight and nine o'clock, when they were delivered to the Indianapolis, Bloomington & Western Railway to be forwarded by it to

the place of destination. When the hogs were loaded they were brought out of water in a ditch and they were cool; when they arrived at Danville, a distance of six miles, they were hot and panting, the day being very warm. On arriving at Danville, appellee went to the agent of the road and informed him that the hogs needed water; he was then directed to the yard-master, who refused to water them, and when applied to a second time by appellee and told that the hogs would die if not watered, he replied that he did not care if they all died. There was no water near, and appellee was unable to water them until after they had been transferred to the track of the I. B. & W. about nine o'clock, when they were watered; they were again watered at Covington and arrived at Indianapolis about nine o'clock the next morning; they were then cool; nine of them were dead and eight more badly injured.

The contract of the parties was read in evidence from which it appeared among other things, that in consideration of a reduced rate for carrying the stock, appellee agreed that he would accompany the same and feed and water them at his own risk. This agreement could only be performed by him upon the company's furnishing him with proper facilities for so doing. It was as much the duty of the company to provide water at suitable points on the line of its road for the use of stock, as to carry it, and as it owned the trains, the tanks and the water within them, and had entire and exclusive control of all the movements and stoppages of the trains, with which no shipper could interfere, appellee was at its mercy and could only water the stock when permitted to do so by the employes of the company. I. C. R. R. Co. v. Adams, 42 Ill. 487; T. W. & W. Ry. Co. v. Thompson, 71 Ill. 439.

The evidence tends to show that appellant had a tank at Danville, and when its employes were informed that the stock would die if not watered, it was their plain duty, instead of insulting appellee with taunting remarks, to have hauled the car containing his stock to the tank and afforded him an opportunity to have watered it, and for the neglect of this duty the company is liable if damage resulted therefrom.

It is next claimed by appellant's attorneys that appellee failed to comply with a provision of the contract to the effect that "no claim for damages should be allowed or paid by the company, or sued for in any court, unless a claim for such loss in writing, verified by the affidavit of the claimant or his agent, and delivered to appellant's general freight agent at his office in St. Louis, within five days from the time said stock should be removed from the cars." The stock was unloaded on May 18th, and on the 19th, appellee made a claim upon the company for his damages, and after verifying it by affidavit, forwarded it by mail addressed to A. C. Bird, General Freight Agent of W., St. L. & P. Ry. Co., at St. Louis, Mo. The mail left Danville at 12 o'clock M., on the 19th, and should have reached St. Louis the same evening. On the 25th or 26th, appellee received an answer to his letter from Mr. Bird, saying that the road was under no obligation to pay the claim. Appellee stated as a witness that the letter had been lost and that he did not remember its date. In Sec. 501 of Wade on the Law of Notice, it is stated, that when the notice is not of that character that the mere mailing of it is sufficient to charge the party with notice, such mailing would, however, be a step in the direction of actual notice, and slight corroborative evidence would warrant the inference that such notice was received. Take the whole of the evidence in this case, especially the fact that an answer was so promptly received, and we are inclined to think the finding of the jury upon this point was justified.

Appellant complains of the ruling of the trial court in permitting appellee to testify to the contents of the letter received from Bird, instead of producing the letter itself. We have carefully examined the evidence of appellee in reference to its loss, and think sufficient foundation was laid to justify secondary evidence of its contents. It was not necessary to produce all the persons who had merely handled the letter to testify as to their ability to produce it. It was not shown to have been in their custody, nor did it belong there, and to attempt to trace it through all such sources would be endless.

The next error assigned, we regard as more substantial.

By the contract for the shipment of the hogs signed by appellee, he agreed to load and unload the stock, and that the company should not be liable for suffocation caused by crowding or overloading.   One of the theories of the defense below was that the injury to the hogs was caused by appellee's overloading the car, and to support this defense, appellant introduced as a witness William Sanduky, who stated that he had been in the habit of shipping hogs in cars for many years, and appellant then offered to prove by him, that hogs of the number and weight of the hogs in controversy could not be safely shipped in one car in hot weather, but an objection by appellee was sustained, and the court refused to receive the evidence, to which appellant at the time excepted.   This was not expert evidence.   It was the proof of a fact that could be testified to by any one who knew it. Alexander v. Town of Mt. Sterling, 71 Ill. 366.   It was especially important to appellant in this case, in view of the evidence upon which appellee relied for a recovery.   The first we hear of a part of the hogs being dead and others permanently injured, was on their arrival at Indianapolis.   The jury must have inferred in the absence of proof tending to show the contrary, that the injury was caused by the failure to water the hogs before they were transferred by appellant to the I., B. & W., at Danville.   This evidence tended to show that the injury was caused by the fault of appellee in overloading, and was therefore important as tending to rebut the case made by plaintiff, and should have been admitted by the court.

Judgment reversed and cause remanded.

Reversed and remanded.