T., B. & H. R'y Co. v. J. W. MONTGOMERY.

(No. 6886.)

APPEAL from Caldwell County.   Opinion by DAVIDSON, J.

STOREY & STOREY, counsel for appellant.

No counsel appeared for appellee.

§ 238. *Common carriers; liability of for delay in transporting and failure to feed and water live-stock in transit; charge of court; case stated.*   This suit was brought on the 29th day of January, A. D. 1889, by appellee against appellant, in the county court of Caldwell county, Texas, for damages in the sum of $300, alleging that on the 12th day of October, 1888, appellee delivered to appellant, a railway company and common carrier, forty-eight head of cattle in good condition, to be by appellant transported in said like condition from the town of Lockhart, Texas, to East St. Louis, in the state of Illinois; that appellee paid appellant for said transportation to said point within a reasonable time, but that appellant, disregarding said contract, negligently conducted itself, and did not transport said cattle, but carelessly and negligently permitted said cattle to remain on said cars for a greater length of time than permitted by law, to wit, twenty-eight hours, without food, rest or water, whereby they were greatly damaged, in the sum of $300. On the 7th day of February, 1889, appellant filed its answer, and on the 7th day of November, 1889, filed its amended answer, demurring generally to appellee's petition, and specially excepting thereto, because said peti-

tion did not show when, where or in what manner the stock were injured, nor in what said injury consisted. nor when, nor upon what railways, the delays, if any, occurred, so as to enable appellant to investigate and meet said charge for damages, and answering by general denial, except when specially admitted in said answer.

Appellant admitted that the Taylor, Bastrop & Houston Railway Company was placed in the hands of Receivers Eddy and Cross on the 11th day of November, 1888, and was so in their hands at the time of filing said answer, and was being operated by and under the control of said receivers, under the direction of the United States district court appointing them. Appellant alleged that appellee's cause of action occurred long prior to said appointment, and that the receivers were in no way liable therefor, nor to be sued in said action; that said shipment, if any was made, was upon a written contract, and that in said contract, for a valuable consideration, appellee agreed and released appellant from all liability of a common carrier in the transportation of said stock, and agreed that the liability of said carrier should be that of a mere forwarder or a private carrier for hire, and released said company from all liability for damages to said stock while in transit; that appellant was released from all risk or injury or loss from delay caused by storms or floods, or overloading said cars, from fright of animals, or overcrowding one upon another; that appellee would assume full control and care of said stock while in transit, to load and reload whenever necessary, and the full control and care and management of said animals in feeding same; and it was specially agreed that appellant was to be released from any such care and attention, and was released from any liability by reason of any damage to said stock caused by any lack of care and attention in feeding, or lack of feed; that, in case of loss, the market value of said animals at the place of shipment should be the measure of damages, and, in case

402

of partial loss, the same proportion; that its liability should cease at the end of its line; that it was not liable for any loss occurring upon any other roads or lines of roads; that by reason of said conditions and stipulations, which were limitations upon appellant's common-law liability, and were upon a valuable consideration, and were reasonable and valid, appellant was released from all liability for the loss, as set out in appellee's petition, for the reason that appellee under said contract did take charge of and care for said stock while in transit, feeding and watering same whenever he deemed it necessary, and that whenever requested by the appellee it stopped and gave him an opportunity to feed and water said stock; that there were sufficient and convenient feeding stations between Lockhart and East St. Louis, and that, if there was any damage to said stock from want of feed, it was owing to the neglect and failure to feed on the part of appellee; that appellee did feed said stock twice between said points; that, if appellant was liable for said damages, it could not be held for the difference between the net price of said cattle in East St. Louis and their market value in Lockhart on the 12th day of October, 1889, the date of shipment; that appellant's line of road over which said stock passed was only fifteen miles long, and that the damage, if any, occurred between Texarkana and Little Rock, on another and different line of railway. The court overruled the general demurrer and special exceptions, to which action of the court the appellant excepted, and a trial was had upon the issues as made by the pleadings on the 20th day of February, 1890, resulting in a verdict for appellee in the sum of $144, upon which judgment was rendered against appellant, the Taylor, Bastrop & Houston Railway, and George A. Eddy and H. C. Cross, receivers of said road, to which said judgment appellant excepted, and gave notice of appeal to the court of appeals of the state of Texas.

First assignment of error: "The court erred in giving to the jury the second subdivision of its charge, as follows: 'If you believe from the evidence that the defendant company did receive from the plaintiff on the 12th day of October, 1888, at the town of Lockhart, under a contract to deliver to plaintiff at East St. Louis, forty-eight head of cattle, in good condition, and in the ordinary time which it takes to transport stock over their line or route between the above-named points, viz., Lockhart and East St. Louis; and that the said railway company failed to deliver the said forty-eight head of cattle, as per contract; and that when said cattle were delivered to plaintiff they were in bad condition, and damaged, and were not worth as much as they would have been had they been delivered in the usual time and in good condition,— you will find in favor of plaintiff.'" In this connection the court further charged the jury "that it is the duty of a common carrier, who conveys live-stock of any kind, to feed and water same during the time of conveyance, and until the same is delivered to the assignee, unless otherwise provided by special contract; and any carrier who shall fail to so feed and water said live-stock sufficiently will be liable to the party injured for his damages." The proof as to the cause of damage shows that the damage was caused by reason of the fact that the cattle were kept on the cars for too long a time during the journey, without food and water; that they were fed twice between Lockhart and East St. Louis; and that thirty-one hours elapsed between all times of feeding and watering said cattle between said points; and the cattle were reduced in weight about fifty pounds per head thereby. On account of this reduced weight, the cattle sold for about three to five dollars less per head than they would have otherwise sold, if they had been properly watered and fed. This was the only question of damages relied on in the trial below. Appellant contends that the charge

excepted to was erroneous, in that it left it discretionary with the jury to find damages upon an issue not made by the pleadings. In Markham v. Carothers, 47 Tex. 22, our supreme court held that "it is error to charge upon an issue not made by the pleadings;" and in Railway Co. v. Terry, 42 Tex. 451: "When a charge presents a question outside of the case as made by the pleadings, and upon which the verdict might have been found, a judgment based upon such verdict will be reversed." [Loving v. Dixon, 56 Tex. 79.] Under the pleadings and facts shown in this case, tested by the cited decisions, the court's charge did not mislead the jury, and is not subject to the criticisms of appellant. The jury could have found a verdict upon no other evidence, and, while the charge could have been more artistic in its phraseology, it is deemed sufficient, and no special charge was asked. But suppose it was erroneous. Was appellant injured by it? If not, then such error would be immaterial. When it is apparent that no injury has resulted from giving a charge, the occurrence of immaterial error is not a ground for the reversal of the case. [Sayles, Civil St., art. 1318, note 1.] If the verdict is authorized by the facts, and the justice of the case has been attained, a judgment will not be reversed on account of an erroneous charge. [Same authority, and note 3 and authorities collated.] The only evidence before the jury on the question of damages was as to the loss in the weight of the cattle by reason of the appellant failing to feed and water same as it should have been done. The whole case rested upon this testimony. The element of want of negligence in delivering the cattle was not relied on nor proven. We believe the charge, taken as a whole, is sufficient, and sufficiently correct.

§ **239.** *Common carriers; right of, to change by contract the measure of damages fixed by law.* The second assignment of error is as follows: "The court erred in giving to the jury the third subdivision of its charge,

which was as follows: 'If you find in favor of plaintiff, the measure of damages will be the difference between the market value of said cattle at the time of their arrival at St. Louis, in the condition in which they then were, and the market value of the same had they been delivered in the usual time and in good condition.'" The vice, as contended for by appellant, in this charge, consists in the alleged erroneous rule given the jury by which they should be governed in measuring the damage to which the appellee would be entitled. The rule given by the court allowed the jury to find the damage at point of destination, instead of at point of shipment, as provided for in the contract. In its position appellant is supported to some extent by a former decision of this court. [3 Civil Cas. Ct. App., § 439.] There is some conflict between that decision and the rule adopted by the supreme court, and we will conform hereafter to the latter decision. [Railway Co. v. Maddox, 75 Tex. 300.] The stipulation in the contract of shipment was as follows: "The said second party further agrees, for the consideration aforesaid, that in case of total loss of any of the stock from any cause for which the first party will be liable to pay for the same, the actual cash value at the time and place of shipment, but in no case to exceed $100 per head, shall be taken and deemed as a full compensation therefor; and in case of injury or partial loss, the amount of damage claimed shall not exceed the same proportion." In speaking of this character of stipulation this court said, with respect to the question of negligence on the part of the carrier, that this question "has not been adjudicated by this court, or by the supreme court of this state, but it has been passed upon by the supreme court of the United States, and by the courts of last resort of some of the states, and the decisions are conflicting." [3 Civil Cas. Ct. App., § 439.]

In the recent case of Railway Co. v. Maddox, 75 Tex. 300, Chief Justice Stayton reviewed the entire question,

and all the authorities cited, in a very elaborate and exhaustive opinion. It will be observed that in this case there is a limitation placed upon the damage to be recovered, without reference to the value of the stock damaged as set forth in quoted stipulation, as in case decided by the supreme court. Chief Justice Stayton says: "There is a great conflict of authority as to whether such contracts will protect the carrier against liability for the actual value of property to which they apply, if this be lost or injured through the negligence of the carrier." "It would seem reasonable, where parties have actually negotiated and come to an agreement as to the value of a thing shipped, with a view to avoid controversy as to the actual value, if it be lost while in the hands of the carrier, that such an agreement should be sustained; for the parties before loss may as well by agreement fix value while each has equal means of doing so, as by proof to be made after a loss occurs; and such an agreement would not operate as a limitation on the liability of the carrier, for the valuation actually agreed upon ought to be deemed, in such cases, the actual value." The stipulation set out in the contract does not fix the actual value of the cattle shipped, nor does it fix any certain or determinate amount as damages in case of loss or injury. It leaves the matter uncertain, and has a tendency to lead to litigation. Such contracts "induce a want of care, for the highest incentive to the exercise of due care rests in a consciousness that a failure in this respect will fix liability to make full compensation for any injury resulting from that cause; and, if the meaning which we attach to the words 'liability' and 'exemption' be correct, the tendency of such contracts is to exempt for negligence. The common carrier is entitled to an opportunity to fix compensation in view of the labor to be performed and the risk to be incurred in a given case, which must depend to some extent on the value of the thing to be carried and its intrinsic qualities; but when

this opportunity has been given, and the carrier receives the freight, any contract which relieves from liability for its full value, if lost through the carrier's negligence, in our opinion violates the wholesome rule so long and well established in other cases in which the carrier attempts by contract to relieve itself from liability for negligence of itself or employees. In view of the intrinsic justice of such a rule, its easy and certain application, its avoidance of all necessity for inquiry whether a contract be fairly and understandingly made, or made under the influence of the unequal position the great carriers of the present time have exerted, and may too frequently exert, and in view of the conflict of authority, we feel constrained to hold that a common carrier cannot shield itself from responsibility for the full value of property lost through its negligence, by such contracts as are before us in this case." [Railway Co. v. Maddox, 75 Tex. 309, 310.] This view tends to the suppression of litigation, as well as to support the theory of our law that common carriers will not be permitted to avoid their liability as such, "by inserting exceptions in the bill of lading" given upon the receipt of goods for transportation, and such views are in harmony with the laws prohibiting "special agreements" to be "made in contravention" of their liability as such common carriers. The court did not err in charging the measure of damages should be controlled by the value at point of destination, instead of at the time and place of shipment. It would therefore follow that the court correctly ruled in refusing to give in charge appellant's special requested instruction fixing the criterion or rule for measure of damages at the place of shipment.

§ **240.** *Common carriers; must feed and water livestock in transit; if shipper accompanies and undertakes to feed and water them, must furnish him with the necessary and proper places for the purpose.* The contract contained another stipulation, to the effect that ap-

pellee agreed to feed and water the stock in transit, and to release appellant from all damage on account of any or all losses or injury that might happen or occur to said stock in transit. It is not necessary here to decide whether* this contract was or was not reasonable and legitimate, as the matter is presented in this record, because appellant has not shown that it afforded appellee sufficient and reasonable facilities and necessary opportunities *in transitu* to feed said stock as should have been done during the trip.

It is assigned as error that the court, in charging the jury if they "believed from the evidence that though the cattle were shipped under a special contract, and that the plaintiff was to have control of said cattle, and to feed and water the same, and that the defendant had feeding and watering stations at convenient points along its line between Lockhart and East St. Louis, and that defendant failed and neglected to notify plaintiff of the location of said feeding and watering places, and of the time when the trains conveying said cattle arrived at each of said feeding and watering stations, and, by reason of such negligence, the cattle being shipped were damaged," they would find in favor of plaintiff. To overcome this supposed error the appellant asked the following charge, which was refused, to wit: "You are instructed that if from the evidence you find that plaintiff undertook to care for and feed said stock during its transit, and that he failed to notify the defendant that his stock needed feed, and made no demand of it to stop and give him an opportunity to feed, then you are charged that such acts on his part would be such negligence as would prevent his recovery, and you will find for the defendant." Appellant assigns the court's action in refusing to give this charge as error. The evidence on this phase of the case is that the cattle were in a bad condition when they reached East St. Louis, caused by being kept on the cars too long without food, rest and

water.   The cattle were kept on the cars between Palestine and Little Rock and East St. Louis thirty-one hours. The stock were rested and fed twice between point of shipment, Lockhart, and East St. Louis, their point of destination.   Poston, the party who accompanied the cattle as appellee's agent, testified to this, and further, that he did not make any demand of the railroad to have the cattle rested or fed; that he was only furnished an opportunity to feed at the two points named.   He gave the agent at Little Rock notice in writing that he claimed damages that had accrued to the stock in the sum of $250, as well as to the agent of the railroad at East St. Louis.   This is the evidence on the subject set out in the statement of facts.   .

Where a shipper agrees to accompany his stock, and feed and water them, at his own risk, the carrier would be liable for loss because of its failure, if it should fail to furnish him with proper facilities for so doing.   [Railway Co. v. Pratt, 15 Ill. App. 177.   See, also, Bryant v. Railroad Co., 68 Ga. 805; Clarke v. Railroad Co., 14 N. Y. 571; Porterfield v. Humphreys, 8 Humph. 497; Dunn v. Railroad Co., 68 Mo. 268.]   A railroad company which transports live-stock should not only have the proper machinery and facilities for unloading said stock whenever, in the course of transit, it may be necessary to unload them for necessary exercise and refreshment, but also to unload, feed and water them at the journey's end, if there be delay in making delivery over and discharging the carrier from liability, and the health of the animals requires this to be done.   [Dunn v. Railroad Co., 68 Mo. 268.   "So it is the duty of the carrier of live-stock, in the absence of special contract, and when they are accompanied by their owner, or some agent of his whose duty it becomes to provide for them, to give them that attention which they require as living animals, and he cannot treat them as inanimate freight."   "And there can be no doubt that if the carrier intrusted with

the living animal of any description for transportation should suffer it to die from starvation or thirst, or for the want of ordinary care and attention in any respect which it required, he would be liable, unless he should be relieved from the duty by contract with his employer." [Hutch. Carr., § 322.] This is the rule, and, in order to avoid its consequence and effect, some special contract must be shown exempting the carrier from its operation. "The question whether the carrier can exempt himself from liability for losses occurring from negligence of himself, or his servants or employees, is one upon which there is a great diversity of opinion." "It must be admitted, however, that the weight of authority in this country is in favor of excluding it altogether as an element of contract between the carrier and his employer, and of holding the former to a rigid responsibility for every degree of negligence, without the power by contract, or in other mode, to divest himself of it." [Hutch. Carr., § 260, and authorities collated in note 1 thereto; also § 248; Railway Co. v. Maddox, 75 Tex. 300.] By the weight of authority in this country, a common carrier cannot contract for exemption from liability for losses caused by his own negligence or that of his servants. A common carrier may contract that his employer shall feed and water his own stock while in transit, and to this end may contract that the said employer may load and unload same for such purpose. But it is the duty of the carrier to furnish the necessary facilities and places for carrying out this contract, and it must furnish the necessary opportunities for the proper feeding and watering of said stock. This he is primarily bound to do, and his failure to do so, whereby the stock suffer, would constitute gross negligence for which he would be responsible. Whenever negligence attaches, it cannot be contracted away, as we have already seen. The carrier is required to prepare the proper accommodations, and give opportunities and furnish facilities, for the neces-

sary feeding and watering the stock in transit. This is in line with his business and duties, and it is one of his primary duties. The shipper may be by his contract required to feed and water the stock at the places and stations, but the carrier must furnish the proper places, to the end that the stock may be fed and watered, and the shipper have an opportunity to carry out his contract. The promptings of humanity would even dictate this as a fair and proper rule. The appellant in this case should have furnished the shipper or his agent the necessary and proper place for feeding the stock in transit. In not doing so we think it was guilty of negligence. It was not relieved of this imperative duty by the special contract entered into with appellee, by which appellee agreed to feed and water said stock. The court's charge was correct, and there was no error in refusing the requested instruction.

§ 241. *Evidence.* The testimony of Sublett and Montgomery, as to the value of cattle in St. Louis at the time the cattle were sold, was objected to for several reasons. While it is believed that such testimony was properly admitted under the rule laid down by Sutherland on Damages, and followed by our supreme court [2 Suth. Dam., p. 376; Railway Co. v. Fagan, 72 Tex. 127], it is not necessary to pass on that question, because the value of the cattle was fully proven by Poston, and without objection. He was in that market at the time of the sale, and knew the prices the cattle brought, and the prices they should have brought, and so testified.

§ 242. *Receivers; date of appointment of, not sufficiently established by admission in pleading of defendant railroad company as against plaintiff.* Appellant assigns as error the rendition of judgment against the receivers, and makes as a proposition under this assignment " that receivers are not liable to be sued upon a cause of action arising before their appointment." This proposition is stated too broadly, for there are unques-

tionably many contracts and causes of action arising before their appointment for which receivers could be sued. But it is not necessary to discuss that question here, because it is not raised so as to require a discussion. The appellant admitted that the receivers were appointed after the cause of action accrued. This was an allegation in its answer. This was not carried into the statement of facts, and, as an admission, is not binding upon appellee as to the date of said appointment. After a careful investigation of the questions involved in this case by the able brief of the appellant's counsel, we have found no error requiring a reversal of the judgment, and it is therefore affirmed.

April 29, 1891.                                  Affirmed.