## J. B. Harris v. Wm. Dozier.

1. CONTRACTS—*Different Papers Forming a Single Agreement.*—It matters not out of how many different papers an agreement is to be collected, so long as they can be sufficiently connected in sense and are reduced to writing, they constitute one and the same contract; and in this case, although the party wall contract was not made until some days after the making of the promissory note and the execution of the bond for a deed, they should be construed together and regarded as one transaction.

2. SAME—*A Contract Held to be the Contract of a Bank and Not of its President as an Individual.*—The court holds, in view of the evidence, that at the time of the execution of the contract sued on the person with whom appellee contracted was acting for the bank of which he was president, and not in his individual capacity, although the contract was signed by him individually, with the word "president" written after his name.

3. PARTY WALLS—*Contracts Relating to, Binding on Purchasers.*—An agreement between the owners of adjoining premises, whereby one is to build a party wall, one-half on the ground of each, and the

Harris v. Dozier.

other is to pay for one-half the cost of its construction when he uses the same, will create cross-easements as to each owner, running with the land, which will bind all persons succeeding to the estates to which such easements are appurtenant, and a purchaser of the estate of an owner so contracting will be required to pay one-half of the cost of the wall, if he avails himself of its benefits.

4. SAME—*A Contract in Regard to, Applied.*—The court holds that the use to which the defendant in this case put the party wall to which this controversy relates made him liable within the terms of the party wall agreement between his grantor and the complainant.

5. CHANCERY—*Relief Under a General Prayer where Allegations are Sufficient to Admit Necessary Proof.*—The court holds that the averments of the bill filed in this case are broad enough to justify the admission of proof that the party wall contract sued on was intended as a contract of the bank owning the land affected, and not of its president individually, and that the prayer for general relief is sufficient to allow the court to give the relief that was granted without a specific prayer for reformation of the contract.

Bill, to enforce a party wall agreement. Appeal from the Circuit Court of Coles County; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 2, 1897.

J. F. HUGHES, attorney for appellant.

The contract in evidence is the individual contract of Mr. Dunlap, the word "president" added to his name being mere description. Hately v. Pike, 162 Ill. 241.

There are no apt words implying an understanding on the part of the bank. Powers v. Briggs, 79 Ill. 493.

If this were a proceeding by Dozier against the bank directly for the purpose of holding the bank liable upon the agreement, it might be admissible to show by parol evidence that Dunlap was in fact acting for and on behalf of the bank in executing the agreement, and that the bank was alone interested, and that the credit was given to the bank by complainant, thus giving the instrument a different legal effect from what appears upon its face; but this is not competent or admissible against an innocent third party, a subsequent purchaser for value without notice. Hypes v. Griffin, 89 Ill. 134; Molony v. Rourke, 100 Mass. 190.

The construction of an independent wall which touched the party wall at several points, but of sufficient strength

to stand for years, although there may be incidental lateral support, was not such a use of the party wall as was contemplated by a contract providing where a party should make use of the wall for a new building, he should pay half of it. Kingsland v. Tucker, 115 N. Y. 574.

J. W. & E. C. CRAIG, attorneys for appellee.

There is no question but that this party wall contract runs with the land. Roche v. Ullman, 104 Ill. 11; Gibson v. Holden, 115 Ill. 199; Holden v. Gibson, 16 Ill. App. 411; Tomblin v. Fish, 18 Ill. App. 439; Behrens v. Hoxie, 26 Ill. App. 417.

The bill containing a prayer for general relief the specific prayer for reformation of the contract was unnecessary. Vol. 3, Ency. Pleading & Practice, 347; Walker v. Converse, 148 Ill. 622; Hopkins v. Snedaker, 71 Ill. 449; Holden v. Holden, 24 Ill. App. 106; Davidson v. Burke, 143 Ill. 139.

The contract was properly reformed against a subsequent purchaser with notice. West v. Madison Co. Agl. Bd., 82 Ill. 205; Bent v. Coleman, 89 Ill. 364; Erickson v. Rafferty, 79 Ill. 209; Merrick v. Wallace, 19 Ill. 486.

Appellant had sufficient notice, the contract being in his apparent line of title and recorded. Bent v. Coleman, 89 Ill. 364; Erickson v. Rafferty, 79 Ill. 209; Babcock v. Lisk, 57 Ill. 327; Parker v. Merritt, 105 Ill. 293; Chicago, R. I. & P. Ry. Co. v. Kennedy, 70 Ill. 350; Grundies v. Reid, 107 Ill. 304.

The visible appearance of the property was enough to put appellant on inquiry and therefore to give him notice. Rock Island & P. Ry. Co. v. Dimick, 144 Ill. 628; Russell v. Hubbard, 59 Ill. 335.

Appellant made use of the wall within the meaning of the contract. McEwen v. Nelson, 40 Ill. App. 272; Greenwald v. Kappes, 31 Ind. 216; Kingsland v. Tucker, 44 Hun (N. Y.), 91.

MR. JUSTICE GLENN DELIVERED THE OPINION OF THE COURT.

This is an appeal from a decree of the Circuit Court of Coles County rendered against James B. Harris, W. B.

Dunlap and the First National Bank of Mattoon, defendants in the court below, and in favor of William Dozier, complainant, wherein the appellant is charged with one-half of the cost of the construction of a party wall, constructed by appellee, under a written contract with the First National Bank of Mattoon, upon the dividing line between adjacent lots in the city of Mattoon.

From this decree James B. Harris, the present appellant, prayed an appeal to this court, W. B. Dunlap and the First National Bank of Mattoon not joining in the appeal.

The facts in this case seem to be as follows: The First National Bank of Mattoon being the owner of the west twenty feet of lot 4, in block 118, in the city of Mattoon, sold on the 28th of June, 1890, these premises to appellee for the sum of $900, and in payment for this lot appellee gave his note payable on or before five years from date. The bank gave him a bond for a deed, by which the bank bound itself to make him a deed for the premises upon the payment of the note. At the time of the making of this sale, and the making and the delivery of the bond and promissory note, appellee and W. B. Dunlap, representing himself to be acting for the First National Bank, made a verbal contract for the building of a party wall on the line between lots 4 and 5 in block 118, to be built of stone and brick, and to be built by appellee at his expense. Dunlap at this time represented to him that the bank owned both the lots. Subsequently on the 6th day of August 1890, this verbal agreement was reduced to writing, and is as follows:

"This agreement made this 6th day of August, 1890, between William Dozier of the first part and William B. Dunlap, president of the First National Bank in said county and State, of the second part, witnesseth:

That William Dozier doth covenant and agree to and with said W. B. Dunlap that he will erect a brick wall, stone foundation, on the line between lots 4 and 5 in block 118, original town of Mattoon, one-half of the wall to be on each of said lots, to be erected at the expense solely of said Dozier and to be entirely under his control until the party of the

second part, their heirs and grantees, shall desire to build to the same as hereinafter provided.

And W. B. Dunlap doth covenant and agree to and with said Dozier that the party of the second part will allow him to build the aforesaid wall one-half each on lots 4 and 5, and if the party of the second part, their heirs, assigns or grantees, desire to build on to the said wall they are to pay to the said Dozier, his heirs, assigns or grantees, one-half of the value of said wall at the time such joint is desired, and if the value of such half can not be agreed upon, each party shall elect one disinterested person, and the two so selected shall select a third, and their determination shall be binding, such payment to be made before any use of the wall is made by the second party, and when so paid for said one-half wall shall be the property of second party.

Witnesseth our hands and seals the day and year above written.

WILLIAM DOZIER,                [SEAL.]

W. B. DUNLAP, President.        [SEAL.] ”

This contract was filed for record August 26, 1890. Although this contract is signed by W. B. Dunlap as "president," and he describes himself in the body of the instrument as "president" of the First National Bank, there is no doubt from the proofs in the case but he was acting for the First National Bank of Mattoon, and appellee so understood the matter at the time.

James B. Harris, the appellant, purchased of the First National Bank of Mattoon, for $1,800, the east half of lot 5, block 118, original town of Mattoon, on the 13th day of September, 1892, and the bank made, executed and delivered to him a deed for the premises the same day.

On the 24th day of March, 1892, W. B. Dunlap and wife conveyed to the First National Bank of Mattoon twenty feet off of the west side of lot 4 and lot 5, and the east half of lot 6, all in block 118, original town of Mattoon.

On the 24th day of June, 1895, the First National Bank of Mattoon conveyed to William Dozier twenty feet off of the west side of lot 4 in block 118, original town of Mattoon.

The appellant commenced the erection of a building on the east half of lot deeded to him by the First National Bank, in April, 1895, and completed the same during that summer. The rear and west walls of this building were brick. The first story of the front was iron, the second brick. On the east of this building, and next to the party wall he built what he styles a "studded" wall, made of four by fours, placed fourteen inches apart, lining the first story with boards, and lathing and plastering the second story. At places it touched the party wall, at others it was cemented to the same to keep the water out, and at one place the brick were chipped off the party wall to get the timbers of the "studded wall" in place and up to the party wall. It protects his wall from the rain, storm, snow, sleet, wind, cold and heat.

At the time appellant erected his building the party wall was worth $250. The bill filed set forth the facts substantially as herein stated, and asked that appellant be made personally liable therefor, and that the value thereof be declared a lien on the east half of lot 5, block 118, original town of Mattoon.

Appellant and the First National Bank of Mattoon answered, denying the allegations of the bill. W. B. Dunlap was defaulted.

The court, among other things, found that the contract entered into for the erection of the party wall was the contract of the First National Bank of Mattoon; that appellant as the assignee was personally liable for the value thereof, the sum of $250. The court also found that he had erected a building on the east half of lot 5 and had joined to the party wall. A personal decree was rendered against him for the payment of the amount found due within thirty days, and in default of payment it was ordered that a sale be made, as in cases of foreclosure.

It is urged that the court erred in finding that the party wall contract was one between the First National Bank of Mattoon and appellee. It seems the legal title to the east half of lot 5, block 118, original town of Mattoon, was in

W. B. Dunlap, and the equitable title was in the First
National Bank of Mattoon. By the evidence it stands
uncontradicted that at the time the bank sold the west half
of lot 4 to appellant, the contract for the party wall was
entered into between appellee and Dunlap acting for the
bank; that appellee would not purchase unless the con-
tract for the party wall was made. Although the party
wall contract was not made until some days after the mak-
ing of the promissory note and the execution of the bond
for a deed, yet they should be construed together and
regarded as one transaction. It matters not out of how
many different papers it is to be collected, so long as they
can be sufficiently connected in sense, and are reduced to
writing, they constitute one and the same contract. This
principle is elementary. Construing this party wall con-
tract and the bond for a deed and the promissory note as
one contract or transaction, it would seem evident that
Dunlap, at the time of the making and delivery of the bond
for a deed, the promissory note, and the party wall con-
tract, was acting for the bank.

The fact that he described himself in the body of the
party wall contract as "William B. Dunlap, president of
the First National Bank," and signed his name to the same
as "W. B. Dunlap, president," is a circumstance tending to
show that he was acting for the bank. This in connection
with the fact that at the time the sale was made, and
during their negotiations, he told Dozier that these lots
belonged to the bank, make it evident he intended and
thought he was acting for the bank, and not in his individ-
ual capacity when he signed the contract. It is averred in
the bill that Dunlap, who was president of the bank, signed
his individual name to the contract as president by mistake
and error, when he should have signed it by the corporate
name, the "First National Bank of Mattoon."

The averments in the bill are broad enough to allow this
proof, and the prayer of the bill for general relief, that appel-
lee may have such other and further relief as to equity may
seem meet, is sufficient to allow the court to grant the relief
that was granted.

It is next urged that the court erred in finding appellant personally liable on the party wall contract, and in making the amount found due thereon a lien on the east half of lot 5, because he had no notice of the existence of such contract.

The question as to whether the covenants and stipulations in a party wall contract, for the construction of a party wall between the adjacent proprietors, such as entered into by the parties in this case, are such as run with the land, is no longer an open question.

The Supreme Court say in the case of Roche v. Ullman,. 104 Ill. 11 : "We think the decided weight of authority establishes the position that an agreement under the hands and seals of such parties, containing covenants and stipulations like those found in the instrument we are considering, will, when duly delivered and acted upon, as was done in this case, create cross-easements in the respective owners of the adjacent lots, with which the covenants in the agreement will run so as to bind all persons succeeding to the estates to which such easements are appurtenant.  This being so, it follows that Roche, in succeeding to the east half of the lot, whereby he acquired an easement in the west half, became bound for the performance of the covenant to pay one-half the costs of constructing the wall.  We do not think it necessary to enter upon a review of the authorities upon the subject, but will content ourselves with a reference to the following cases, which are believed to sustain the conclusion reached :  Keteltas v. Penfold, 4 E. D. Smith, 122; Savage v. Mason, 3 Cush. (Mass.) 504; Maine v. Cumston, 98 Mass. 317; Standish v. Lawrence, 111 Mass. 111; Dorsey v. St. Louis, Alton & Terre Haute R. R. Co., 58 Ill. 68; Rindge v. Baker, 57 N. Y. 209; note to Spencer's case, Smith's Leading Cases, 68; Weyman's Ex'rs v. Ringold, 1 Bradf. 40; Giles v. Dugro, 1 Duer, 331."

One-half of the party wall rested on the east half of lot 5, block 118, original town of Mattoon.  Appellee was in the open, notorious and exclusive possession of the party wall at the time appellant purchased the east half of lot 5.  The party wall contract was recorded on the public land records

of Coles county at the time and for some time before appellant's purchase. These circumstances establish the fact that appellant had constructive notice, which is sufficient in this case. In fact this notice has the same force and effect as actual notice. These principles are so well settled that a citation of authorities would seem unnecessary.

It is contended by appellant that when he erected his building on the east half of lot 5, he did not " build to " or " build onto " said party wall, or did not join to it.

It is clear by the terms of this party wall contract that the parties in entering into it, contracted for the use of a party wall, that it would be used and joined to in the usual manner that such connection is made. The appellee would not enter into a contract for the purchase from the bank of the west twenty feet of lot 4 for the consideration of $900 unless the bank would make the party wall contract. By the terms of the contract appellee built such party wall, one-half on his premises and the other half on the premises of the bank. It was built of stone and brick, and it was a good and substantial wall for the purposes for which it was built. The bank or its assignee was to pay him what it was worth when they should come to use it. It was never intended to be used as the appellant has attempted to use it, as a protection against the rain and snow and wind and cold and heat, and built as close to appellant's building as his ingenuity could build it without being actually attached to it, and by lashing the two walls together with cement to keep the water out of the cracks between them.

This the proofs show is what appellant did. Under this proof he is liable under the contract, for he has used the party wall.

He can not avoid liability by the shift or device resorted to as a defense in this case.

The chief purpose of party walls is to avoid expense and save space.

The contract should receive such construction as will carry out the intention of the parties.

Counsel for appellant rely on the case of Kingsland et al.

v. Lucker et al., 115 N. Y. 574, as sustaining their contention. That case is distinguishable from this. In that case the party wall was found not to be in a proper or fit condition to be used. In this case the preponderance of the evidence shows the party wall built by appellee was in a proper and fit position to be used.

Our holding in this case is sustained by the case of Greenwald v. Kappes, 31 Ind. 216; McEwen v. Nelson, 40 Ill. App. 272.

The decree of the Circuit Court will be affirmed.