SAMUEL J. HUSTON et al., Respondents, v. RICHARD L. deZENG, Appellant.

### Kansas City Court of Appeals, February 6, 1899.

Party Wall: OPENINGS: USE: INTEREST. The term "party wall" in an agreement between owners of adjoining lots conveys the idea of mutuality, and while openings therein may be enjoined, yet if assented to and the wall is used for inclosing, supporting or protecting the buildings of the adjoining proprietor he will be liable to pay his portion of the cost of the wall so used, and on a review of the agreements and evidence in this case defendant is held to have used the party wall and must pay with interest his proportion of the cost thereof.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

ASHLEY, GILBERT & DUNN for appellant.

(1) To determine whether "openings" made in the party wall by Woolf, the common tenant of deZeng and Hus-

ton, is a use of said wall, it is necessary to consider carefully the meaning of the phrase "party wall." Volmer's Appeal, 61 Pa. St. 118; Jones on Easements, sec. 691; St. John v. Sweeney, 59 Howard's Practice, 175; Normile v. Gill, 34 N. E. Rep. 543; 159 Mass. 427. "By usage, the words 'party wall' and 'partition' have come to mean a 'solid wall.'" Jones on Easements, sec. 687, p. 552, note 1, 688; Harber v. Evans, 101 Mo. 661, 665; Sullivan v. Grafford, 35 Iowa, 531; Dauenhauer v. Devine, 51 Tex. 480; Graves v. Smith, 87 Ala. 450; Heiland v. Cooper, 38 Weekly Notes of Cases (Pa.), 560. (2) As to the alleged use of the party wall along the north thirty-eight feet of appellant's lot on account of the extension of the old building by appellant's tenant by a temporary structure for an engine house, some of the roof joists of that extension being joined to the party wall, the evidence shows herein no state of facts entitling plaintiffs to recover for the cost of one half the large party wall. The court will bear in mind that this structure called the engine house is a mere extension of the old building, having only a roof and a cement floor and constructed by the common tenant merely for a shelter for the machinery generating the power for the buildings of both parties while the same were operated as one plant. Fox v. Mission Free School, 120 Mo. 349. (3) The erection of a substantial building which receives support from the party wall, is what the parties manifestly contemplated. Fox v. Mission Free School, 120 Mo. 362; Shaw v. Hitchcock, 119 Mass, 254; Elliston v. Morrison, 3 Tenn. Ch. 280; Beggs v. Duling, 70 N. W. Rep. 732; 102 Iowa, 13. (4) It was manifest error for the court to allow respondents interest on their unliquidated claim against appellant for his tenant's alleged use of the party wall. Dozier v. Jerman, 30 Mo. 216; McCormack v. Lynch, 69 Mo. App. 530.

YEAGER & STROTHER for respondents.

(1)   If the party wall, or any portion of it, was "used" within the meaning of the party wall agreement, defendant is liable for such "use" under the facts of this case.   1 Cooley's Black. [3 Ed.], p. 409; Pillsbury v. Morris, 54 Minn. 492; Auch v. Labouisse, 20 La. Ann. 553; Frohman v. Dickinson, 11 Misc. (N. Y. S. Ct.) 9.   (2)   It may be conceded that ordinarily the term party wall means a wall without openings.   Nevertheless, by either express or implied contract the parties may provide for openings in such a wall without depriving it of its character as a party wall. Grimley v. Davidson, 133 Ill. 116; Hammann v. Jordan, 129 N. Y. 61; Weigmann v. Jones, 163 Pa. St. 330; Deere v. Weir-Shugart Co., 91 Iowa, 422; Allen v. Cass-Stauffer Co., 11 Pa. Co. Ct. (Pa. C. P.) 231.   (3)   This extension or engine room was a permanent and substantial brick structure, two stories high, with joists let into the party wall and roof attached to it, and the party wall formed their west wall.   Under all the authorities, this was a use of the party wall.   Sharp v. Cheatham, 88 Mo. 498; Keating v. Korf-hage, 88 Mo. 524; Thornton v. Royce, 56 Mo. App. 179; Deere v. Weir-Shugart Co., 91 Iowa, 422; Beggs v. Duling, 102 Iowa, 13; McEwen v. Nelson, 40 Ill. App. 272; Harris v. Dozier, 72 Ill. App. 542.   (4)   There was no error in allowing interest on the sum found due plaintiffs as one half the value of the portions of the wall used by defendant.   Ins. Co. v. Kyle, 11 Mo. 278, 284, 294; Smith v. Ins. Co., 64 Mo. 330; Webster v. Railway, 116 Mo. 114; McBeth v. Craddock, 28 Mo. App. 380, 398; McMahon v. Railroad, 20 N. Y. 463, 469, 470.

SMITH, P. J.—Plaintiffs and defendant, in the year 1889, owned, and since then up to the present time have continued to own, adjoining lots in Kansas City, Missouri. The

Huston v. deZeng.

STATEMENT. lot of plaintiffs is located at the northeast corner of Twelfth and Charlotte streets, and extends north of Twelfth street one hundred and eighteen feet. Defendant's lot adjoins on the east and extends north of Twelfth street ninety-three feet. On defendant's lot was a two story brick business building, extending from Twelfth street north fifty-five feet, with a small brick addition in its rear.

On May 22, 1889, plaintiffs made a contract with Woolf Brothers to build for them on the lot of plaintiffs' a three story brick building, to be used for a laundry, which, when completed, was by said contract leased to Woolf Brothers for a term of ten years "from and after the date when said building (should) be ready for occupancy and use by the said Woolf Brothers." This lease contained a covenant by plaintiffs to "keep the entire outside of said building in good repair, excepting the windows and doors," which were to be kept in repair by the lessees, unless damaged by "the elements without negligence" of the lessees. Another provision of this lease is, that "in case said building shall be damaged by fire or the elements so that the same shall interfere with the carrying on of business" of the lessees "in the building, then in case said damages to said building can be repaired within forty (40) days after notice" to the plaintiffs or their agent, they were bound to do so and make a proportionate reduction in rent; and in case it could not be repaired within the time, the lease to be terminated. By the terms of this contract the building was to be completed within five months from May 22, 1889, and sooner, if possible.

Before the construction of their building under this contract, plaintiffs made the party wall agreement sued on. This agreement is dated July 5, 1889. It recites the ownership by the parties of their respective lots, and the desire of plaintiffs "to erect on their land a brick building," and to have "the east wall of said building built with its center

Huston v. deZeng.

line coinciding with the boundary line" between the properties of the parties "as a party wall." The parties, then, "for themselves and their heirs and assigns   *   *   * mutually covenant- and agree" that plaintiffs "may immediately proceed to build a party wall of the thickness provided by law and the ordinance of Kansas City *on any part or the whole* of said boundary line between said estates, which said party wall defendant, "his heirs and assigns, shall have the right to use as herein provided; the middle line of which wall shall coincide with the boundary line between said estates." It is then provided that "either party hereto or his or their heirs or assigns may extend in any direction on said line any wall so built, may rebuild same in case of the partial or total destruction thereof, and *when any portion of any wall so built,* extended or rebuilt *shall be used by the party,* or by the heirs or assigns of the party *by whom the portion* of the wall *so used was not constructed, he* or they *shall pay to the party who constructed the same,* or his or their heirs or assigns, *one half of the value at the time of such use of the whole thickness of the portion of such wall. including the foundation thereof so used by him* or them, and the sum so to be paid shall until paid remain a charge upon the land of the party liable to pay the same, but no covenant herein- contained shall be personally binding on any person or persons except in respect of breaches committed during his or their seizin of or title to the said estates." The covenants are to run with the land. In case of extension "in height; chimneys previously built in such wall shall be carried up to a proper height." Disputes "as to any value before mentioned" are to be arbitrated.

In accordance with this agreement plaintiffs, in 1889, built the party wall the full length of the boundary line and fifty-five feet high. It was built of brick with a stone foundation and footings and in places almost touched the west wall of the old building on defendant's lot. After

plaintiffs completed their building, Woolf Brothers moved into it, and have since occupied it as a laundry. In 1892 the increase of their business required more room, and they leased defendant's building and lot adjoining that of plaintiffs for a term expiring December 15, 1899. This lease is dated March 26, 1892. It contains a provision that "in case *the building or buildings now on or hereafter to be erected on said premises* shall be damaged by fire or the elements so that the same shall interfere with the carrying on in the customary manner of the business" of the lessee in said building, then in case the damage to said building can be repaired within forty (40) days after notice to lessor or his agent who may collect said rent, he binds himself to make said repairs and *give a deduction in rent;* and if they can not be made within such time the lease is to terminate.

Concurrently with the execution of this lease, defendant and his lessee made an agreement in regard to certain "changes" and "betterments" to be made in defendant's premises, to cost "at least" $510, for which sum defendant was "to sign and deliver" to his lessee "a receipt   *   *   * as a credit on the rents due and payable under said lease." "The application of said sum and the reparation of said premises" were "to be from time to time surveyed and inspected by J. D. Dockweiler," and "the bills and receipts for all labor and materials used in such repairs" the lessee was to "produce and deliver" to defendant. Defendant then agrees that his lessee "may make the following changes in said premises, No. 804 East 12th street subject, however, as to workmanship and safety to his approval, to wit: to cut three (3) openings through the party wall on the west side of said building, provided lessee secure the consent of adjoining property owner thereto; to extend the upper story of said 804 East 12th street back the full depth of the present addition, and to erect in the rear of the present build-

ing an engine house to be used in connection with the laundry business to be carried on" by said lessee in said premises.

Under this lease and contract defendant's lessee entered into possession of his lot, tore down a part of the "addition" to defendant's building, mentioned in the contract, and built a two story brick extension thereof, including an engine room. This extension is a substantial structure, built of brick, the full width of defendant's lot. The engine room has a concrete floor, and the engine sits upon an independent foundation. The joints, upon which is laid the floor of the second story and the roof of this extension, are set into the party wall a distance of six inches. The height of the extension is about thirty feet above the foundation of the party wall, and the length of it is admitted to be thirty-eight feet. The party wall forms the west wall of the entire extension, in both its first and second stories. The north wall of the extension is formed by the south wall of a brick building belonging to plaintiffs, which is not in controversy here.

This extension was built under the immediate supervision of defendant's agent, Dockweiler, who approved it. Vouchers for the sum of $510, part of the cost of it, were submitted to and allowed by defendant, and credited on the rent of the premises.

In addition to the extension above mentioned, openings were cut through the party wall, according to the contract, so as to give access from one building to the other. Some of these openings were also cut through the west wall of the old building on defendant's lot. In order to prevent rain, water, snow, or anything else from going down between the two buildings and into these openings, the space at the top of the wall of defendant's old building, and between it and the party wall, was covered over with cement. The use of the party wall in the manner described has continued since the summer of 1892 until the present time. While

the evidence is that Mr. Huston did not object to these openings when they were called to his attention, yet it is also in evidence that "he has always claimed that Mr. de-Zeng was indebted to him for the use of that wall."

On April 28, 1897, plaintiffs in writing demanded of defendant that he proceed to have the value of that part of the party wall used by him as described, determined either by agreement of the parties, or, if they could not agree, then by arbitration as provided in the party wall agreement. On May 31, 1897, defendant declined to do either. On August 17, 1897, this suit in equity was begun.

The petition pleads the ownership of the parties of their respective lots; the execution of the party wall agreement and its provisions; the use by defendant of the party wall by making the openings and extensions de-

PETITION. scribed; the demand for an agreement as to the value of the part used or a determination thereof by appraisement, as provided in the agreement, and defendant's refusal to do so; the value of the part used, and prayed judgment for one half of such value, with six per cent interest from the time of use, and that the amount be charged on defendant's lot, and in default of payment, that the lot be sold, and for general relief. The answer admits that defendant "is and has been for a long time last past the owner in fee simple of the property as alleged in plaintiff's petition," and that he executed the party wall agreement and denies everything else.

On February 7, 1898, after trial had, the issues were found for plaintiffs, and a decree entered charging defendant with one half the value of the whole thickness of the portion of the wall, including foundation so used by him at the time it was used, viz: in 1892, with six per cent interest thereon, not from the time the user began, but from the date of the demand to agree on or determine the value. The amount

thus ascertained, the decree charged as a lien on defendant's lot, and in default of payment, ordered a sale thereof. The case is here on defendant's appeal.

It is conceded that the plaintiff built the wall in accordance with the contract entered into between the defendant and himself, and that it was a party wall at least as between themselves. The principal question presented for our consideration is whether or not there was, within the meaning of the party wall contract, such a use of the wall by the defendant as rendered him liable to the plaintiff for half the value thereof. The central idea, the true, comprehensive and undivided meaning of the term "party wall," when used in an' agreement between the owners of adjoining lots of land, providing that one may build a party wall resting one half on each lot, and that the other shall have the right to use it in payment of one half its value, is that of mutuality of benefit, and excludes the idea of any exclusive wall. Harber v. Evans, 101 Mo. 665. In Jones on Easements, section 636, it is stated that, a party wall is used by the owner of an adjoining lot, within the meaning of a party wall agreement, when he erects a building which is supported to some extent by such wall. The use which makes him responsible is the use of the wall for his own structure. He must have used the party wall for the support of his own building; he must have broken into the plaintiffs' wall for that purpose, or must use it by some permanent, physical attachment of some sort acquiring support for his own building by that permanent, physical attachment. These statements made by the author are well supported by the adjudicated cases. McEwen v. Nelson, 40 Ill. App. 272; Maloney v. Dixon, 65 Iowa, 136; Shaw v. Hitchcock, 119 Mass. 254; Deere v. Weir-Shugart Co., 91 Iowa, 422.

In the last cited case it was said that: "It is true that a most important use of a party wall is to give support to the

PARTY wall:
openings: use:
interest.

building to which it is common, as by bearing weight of floors and roof, but it is not the only use and in many cases it is not the chief one. Walls are not only important to support floors and roofs, but they are necessary to *inclose buildings and make them fit for use.*" Greenwald v. Kappes, 31 Ind. 216, was where one of the parties to the contract had used the party wall as a wall of his building without putting the joists thereof into the party wall, and it was held that this was such a use of the wall as rendered him liable under the contract to the other party for one half of the cost of the wall. Harris v. Dozier, 72 Ill. App. 542, was where the contract provided that if one of the parties should build a certain party wall the other, if he so desired, should build onto the wall and pay one half the value of such wall. After the wall was built the other party built a studded wall touching the party wall, cementing it to the same at places so as to keep the water out. The party wall protected the studded wall from rain, storm, sleet, wind, cold and heat. This was held to be such a "use" of the party wall, under the contract, as to make the other party liable for one half of the value of the wall. And it was held in a Pennsylvania case—Allen v. Cass-Stauffer Co., 11 Pa. Co. Ct. 231—that the erection of a wooden structure which would be unlawful under the city ordinance, except that the party wall against which it rested formed one side thereof, was such a use or benefit of the wall as rendered the builder of the wooden structure liable for his half of the charge of erecting the wall although there was no physical attachment.

The parties here are not tenants in common but each is the owner in severalty of his own part, both of the wall and the land on which it stands, but the title of each is qualified by a cross easement in favor of the other, which entitles him to support his building by means of the half of the wall belonging to his neighbor. Graves v. Smith, 87 Ala. 450. There is no doubt that under the authorities that

the plaintiff could have restrained the defendant and his tenants from making the openings through the party wall. Harber v. Evans, *ante;* Jones on Easements, sec. 688.    Nor is there any doubt that to make openings in a party wall for doors, windows and the like is wholly incompatible with the very nature of such a wall.

But in the present case, the defendant made openings in the wall of his old building, which, of course, he had a right to do, and thus exposed the same, as well as the interior of such building, to rain, snow, sleet and to hot and cold atmospheric drafts, and for the purpose of protecting these against such an exposure he cemented the top of his own wall to the party wall.    By the act of cementing this wall of his old building to the party wall he was enabled to inclose such building and protect its interior from the action of the elements.    This practically made the party wall one of the walls of the defendant's building.    Such use of that part of the party wall, we think, in view of the authorities already alluded to, rendered the defendant liable for one half the value thereof, and this without reference to the openings made therein by the defendant.

The addition which the defendant made to his old building was of a substantial and permanent character.    The joists of the second story and roof were inserted in the party wall and the weight of the second floor and the roof was supported by the party wall.    Besides this, the party wall was made one of the walls to complete the inclosure of the new building.    This, it seems to us, was, within the meaning of all of the authorities, such a use of that part of the party wall to which the new building was attached, as made the defendant under the contract liable to plaintiff for one half of the value thereof .

The alteration and extension of the building was contemplated by the agreement between the defendant and his lessee, and was made at the expense of the defendant under

the supervision and direction of his special agent selected for that purpose. The defendant has, for many years, been in the receipt and enjoyment of the increased rents and profits resulting to him by reason of the improvements so made to his property, so that it will not do, at this late day, for him to say that he has not authorized the appropriation of one half of the party wall to his use. By the very terms of the party wall contract the defendant obligated himself to pay one half the value of the wall at the time he used the same. If this amount was not then paid, why was plain-tiff not thereafter entitled to interest thereon? Padley v. Catterlin, 64 Mo. App. 629. The defendant had the use of the wall and no reason is seen why he is not liable, not only for one half the value thereof but for interest thereon during the time payment thereof was withheld. We think the plaintiff was entitled to interest, as a matter of law, from the date the defendant made default in the payment of the amount due under the contract. Padley v. Catterlin, ante; Webster v. Railway, 116 Mo. 114; Dunn v. Railway, 68 Mo. 268; Gray v. Packet Co., 47.

The decree of the court was proper and, we think, should be affirmed, which will be so ordered accordingly. All concur.