PHILIP HAMRA, JR., APPELLANT, v. H. T. SIMPSON, LETITIA SIMPSON, AND CARUTHERSVILLE BUILDING AND LOAN ASSOCIATION, RESPONDENTS.—108 S. W. (2d) 777.

Springfield Court of Appeals.   August 2, 1937.

Rehearing denied September 28, 1937.

*C. G. Shepard* for appellant.

*Ward & Reeves* for respondents.

FULBRIGHT, J.—This is a suit on a party wall contract and was instituted in the circuit court of Pemiscot county, October 4, 1935. Plaintiff prayed for one-half the cost of the party wall, alleging use thereof by the adjoining owner as contemplated in the contract. The answer denied such use. The case was tried before a special judge who found for the defendants. Plaintiff appeals.

The facts in connection with the party wall are as follows: Philip Hamra, Sr., owned a lot adjoining one owned by Ethel B. Thompson, Jennie B. Ford, Tressie B. Wilks, D. W. Wilks, and T. T. Ford, both of which lots fronted on Ward Avenue in Caruthersville. These parties entered into an agreement April 28, 1922, whereby Philip Hamra, Sr., was to build a party wall between said lots; it being provided that the adjoining owners could use the wall, by attaching or building to it any building they might thereafter desire, upon certain conditions, one being that they pay the said Philip Hamra, Sr., one-half the cost of the wall. It was also agreed that one-half the cost was $1,005.

Quite a number of years prior to April 28, 1922, each lot above mentioned had standing on it a two-story brick building with a party wall located the same as the party wall in question, which said brick buildings had been destroyed by fire some two or three years prior to the date of the contract between the parties under which the party wall in suit was constructed.

Philip Hamra, Sr., proceeded to construct a building on his lot, and in accordance with the contract, built a party wall thirteen inches wide, half of which was upon his lot and half upon the lot of the adjoining owners. After the construction of the Hamra building, Philip Hamra, Jr., became the owner. Through mesne conveyances the title to the adjoining lot passed to the defendants in this action, who, about two years prior to the institution of this suit, constructed a building on their lot. It was the intention of the defendants not to use the party wall, but to erect an independent wall. Hamra was of the opinion that Simpson did make use of the party wall as contemplated in the contract. Hence this action.

Plaintiff urged in various assignments that the court erred in admitting, or in excluding, evidence. As this is an equitable proceedings in which we are required to review the entire record, the judgment will not be reversed on that ground. The improper testimony that may have been admitted will be disregarded, and as the evidence which was excluded is nevertheless before us, we shall render the judgment which we think the pleadings and evidence warrant.

[Cunningham v. Kinnerk, 1 S. W. (2d) 241, and cases cited therein; Cunningham v. Kinnerk, 74 S. W. (2d) 1107.] This cause was taken under advisement and, at a subsequent term, the court rendered judgment. He had ample time to study and consider the issues joined and had the advantage of this court in that he heard and saw the witnesses who testified. Although cases such as the one at bar are tried *de novo.* by us, and it is proper to consider the weight of the evidence, this court will usually defer to the findings of the trial judge on disputed questions of fact, and especially so when the evidence is close. [Creamer v. Bivert, 214 Mo. 473, 113 S. W. 1118; McKinney v. Hutson, 81 S. W. 951, and cases therein cited.] With these principles in mind, we shall proceed with the determintion of this case.

The first proposition to command our attention is the construction of the contract upon which this action is based, the essential part of which is set out in plaintiff's petition, and is as follows:

"Whereas, Philip Hamra, party of the first part is contemplating and is about to begin the erection of a brick building facing on Ward Avenue and to be constructed on his lot above described and the parties of the second part are not at this time ready to construct a building on their said lot, but all parties thereto desire to have a party wall and certain mutual rights and benefits in connection therewith.

Now therefore, it is mutually agreed by and between the parties of the first part, and the parties of the second part, for and upon a good and valuable consideration an agreement between the parties hereto, that said Philip Hamra, shall have, and he is hereby given and granted the right to construct a brick wall on the line dividing his lot above described and the lot of the second parties above described, by building said wall one-half upon the property of the party of the first part, and the other half thereof on the property of the parties of the second part and shall have such right, free of any rent or any incumbrance thereon, and with good and lawful right, lease and easement to use and maintain said wall as aforesaid, as a part of his building to be erected on his own land as his property, upon the express condition, consideration and agreement between the parties herein, to-wit: That the said second parties, their heirs, grantees or assigns shall have, and they are hereby given the right and privilege to use said wall so constructed by said Philip Hamra and to attach or to build to said wall any building they may hereafter desire, upon the following conditions, to-wit: (a) That in attaching to said wall or building thereto, they shall not destroy or damage said wall or any part thereof and (b) that they shall pay to said Philip Hamra, his heirs, grantees or assigns, one-half of the cost of the construction of said wall in cash at the

time they attach or build to said wall, and it is agreed herein that one-half of the cost is $1,005.00.''

The contract was duly signed, acknowledged and recorded. It is admitted in the record that the covenants contained in the contract pass with the land. The intent and meaning must be drawn from the four corners of the contract, however, the part which we have quoted contains all the important provisions which are necessary in construing same.

The first paragraph of the contract above quoted is merely introductory. It contains no covenants, but concludes with the statement that ''all parties thereto desire to have a party wall and certain mutual rights and benefits in connection therewith.'' Under the provisions of the paragraph following the party of the first part was given certain rights and privileges of which he availed himself, and these are now enjoyed by his grantee without cost or hindrance. The second parties had certain rights and privileges under the contract of which they could avail themselves when ''they may hereafter desire.'' We cannot conclude from the language of the contract, as we view it, that second parties, their heirs and assigns, are obligated to attach or build to said wall within a reasonable time; nothing to require them to erect a building on their lot and use the Hamra wall at any time. They have the right, privilege or easement flowing from the contract to attach to or build to said wall *whenever they so desire;* not an obligation on their part, but a right or privilege they may exercise subject to the conditions therein stated. Since we find nothing in the contract obligating second parties or their assigns to avail themselves of the right, privilege and easement under the contract, it necessarily follows that we must decide whether or not the defendants, in the construction of the building on their lot, made use of the Hamra wall in such manner as to make them liable under the contract for one-half the cost thereof.

The Hamra wall was built in 1922 on a 36-inch foundation which got narrower as it approached the top of the ground and came up in steps, the wall being 13 inches wide, 28½ feet high at the front and somewhat lower at the rear of the building, the wall being half on one lot and half on the other, and cost $2,010. The Simpson wall is an inferior wall, cost only $300, and was constructed about two years prior to the institution of this suit. It is 9 inches wide, 16 or 17 feet high, and the wall next to the Hamra building was constructed of old brick. Both walls extend from Ward Avenue 90 feet. As heretofore mentioned, the buildings that were previously on these two lots burned, leaving a brick party wall foundation in the location of the wall in dispute. The principle conflict in the evidence is whether Hamra built his 13-inch wall on the old brick party wall foundation for the first 50 feet from Ward Avenue back to the

162

basement, except for repairs in some places, or whether he built it on an entirely new concrete foundation. It is admitted that the rear 40 feet of the foundation of the Hamra building was constructed on the old party wall foundation. The foundation for the Simpson wall was made by dropping forms down by the side of the footing of the Hamra wall and pouring them full of concrete, and this concrete extended up to about even with the dirt surface.

Notwithstanding the theory of the plaintiff to the contrary, we believe the trial judge was cognizant of, and took into consideration, the fact that the wall necessarily has a foundation. A wall includes the foundation and the coping thereof, and in most cases, a party wall is such from the foundation to the top, or not at all. However, in the case at bar, the old party wall foundation remained the several property of the owner of each half. If the Hamra wall were constructed upon the old foundation it could not and did not terminate the interest of the owners of the adjoining lot in that part of the old foundation extending beyond the Hamra wall; and the building of an independent wall upon that part of the old foundation extending from the Hamra wall and wholly on the land belonging to the adjoining owners, defendants herein, would not constitute such an attaching to or building to the Hamra wall as to obligate the defendants to contribute one-half of the cost of construction of the Hamra wall. The trial judge evidently considered the disputed facts in this connection and could have decided that Hamra used the old party wall foundation that was left there after the fire. However, we think it makes but little difference whether the old foundation or a new foundation of Hamra's construction was used. The construction of the Simpson foundation against and upon that part of the Hamra foundation extending over on the Simpson lot beyond the Hamra wall proper did not destroy or injure in any way the Hamra wall, and did not constitute such attaching or building to the Hamra wall as would require contribution on the part of the defendants.

All four walls of the Simpson building are nine inches wide, all four walls have second hand brick in them, and the wall next to the Hamra building is composed entirely of second hand brick. These facts, of themselves, would not prove that the Simpson wall is dependent upon the Hamra wall for support. It was clearly developed in the evidence that nine inch walls are not infrequent in Caruthersville, and that 13-inch walls are not infrequent for the support of buildings such as Hamra's. The question is whether or not the Simpson wall, independent of the Hamra wall, is capable of supporting the building of which it is a part. In other words, could plaintiff's building be moved and leave defendants' without destruction or damage?

It is clear that in spreading the mortar and laying the brick in the

Simpson wall, the mortar in places was pressed against the Hamra wall, which caused the Simpson wall to adhere to the Hamra wall; but there is no evidence that the Simpson wall is anchored in or tied to the Hamra wall. One witness testified that a "header" was placed in every five courses of the Simpson wall to prevent rain and water from running between the walls. Also, the fact was developed in the testimony that in order to prevent rain from blowing between the buildings, the defendant employed a party who, in completing the work, dug out some of the mortar between the bricks in the Hamra wall and used some canvas which was stuck in between the brick in the Hamra wall, which canvas extended over the Simpson wall and was cemented by a roofing cement to the Hamra wall and also to the Simpson wall. In our opinion, this canvas protected both walls. Other witnesses testified that you could see between the two walls and the witness who so placed the mortar and the brick with a "header" further testified that the two walls were intended to be and were separate walls. In the construction of the Simpson wall no damage or injury was done to the Hamra wall.

In the case of Sheldon Bank v. Royce, 50 N. W. 986 (Iowa), a question was involved as to the use of a party wall which is almost identical with the one at bar. In that case defendant's wall was an independent structure, except that in part it was in contact with that of plainiff, and because of this proximity, it was protected from destruction or damage by the elements. It was constructed of soft or unburned brick such as are not commonly used for outside walls. The evidence showed that perhaps a majority of defendant's wall was against plaintiff's building. The court, in that case said: "It is well known that walls built near to other walls because of that fact alone are of different workmanship and materials, and are so made because of the incidental protection they will receive from the neighboring wall; and in a sense there is a use of such wall, but it is not a use in the sense of making it a wall in common." It is true that the Iowa suit was based on a statute, not on contract. There a wall may become one in common, or a party wall, by contributing one-half the expense of building the wall at the time, or if not, and the adjoining owner desires to use it, he may then make it a party wall by paying one-half the appraised value at the time of such use.

We think the case of Huston v. deZeng, 78 Mo. App. 522, cited by plaintiff, confirms the conclusions we have reached in the case at bar. We have examined at length the cases and authorities cited in the Huston case and our study has revealed that the party walls discussed did not only give incidental support to the walls erected by adjoining owners, but gave such support as made the walls one. For instance, in the case of Harris v. Dozier, 72 Ill. App. 542, the wall adjoining the party wall was made of four by fours, placed fourteen

164

inches apart. The first story was lined with boards and the second story was lined with lathing and plastering. Certainly such a wall would not be an independent wall as the party wall was necessary protection against the elements.

We think it plain that the use which is spoken of in the contract in the instant case is the ordinary use to which a party wall is put, that is, resting the roof or the timbers of the house upon or in it, or, of anchoring or tying to it in such a way as is commonly and ordinarily done, thereby making the party wall one of the four walls of each of the adjoining buildings. The incidental lateral support which may be given by a party wall to an independent wall which only touches it at different places, and where the independent wall is sufficient in and of itself to stand all the demands which may be made upon it for years to come, is not such a use as is ordinarily made, and we think clearly not within the terms of the contract in question. [47 C. J., pp. 1351 and 1352.] We may infer from the evidence that the contract entered into made no difference in the height, width, or cost of the Hamra two-story wall, and that Mr. Hamra would have built the identical wall on his own land if the contract had not been made. It is obvious from the testimony that nothing less than a thirteen inch wall is sufficient for a two story wall, such as the Hamra wall. The Hamra building is wider due to the fact that half of one of its walls rests on another's land, an easement that flows from the contract and that plaintiff enjoys without expense or hindrance.

Since there is nothing in the contract, as we view it, that makes it mandatory upon the defendant to use the party wall at any time; since the Simpson wall is a separate and independent wall reasonably sufficient in character and strength to support the Simpson building independent of the Hamra wall; since the Simpson wall is not built to, attached, or tied to, or anchored in the Hamra wall in such manner as is contemplated in the contract; and since the Hamra wall is not used in any sense as a wall for the Simpson building, it is our conclusion that the findings of the special judge are for the right party. We have carefully examined the cases cited by both plaintiff and defendants, as well as many other authorities, and we find no holdings either in our own jurisdiction or in foreign jurisidctions that we think hold in any way contrary to our conclusions.

The judgment of the trial court is therefore affirmed. *Allen, P. J.,* and *Smith, J.,* concur.